UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 05-377 (JRT-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Miguel Lescus-Zarate,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on January 3, 2006, on the pretrial motions of defendant Miguel Lescus-Zarate. Omar A. Syed, Assistant United States Attorney, appeared on behalf of the Government. Robert G. Davis, Esq., and Kristine J. Zajac, Esq., appeared on behalf of Mr. Lescus-Zarate (Zarate).

Zarate advances three separate motions to suppress. Through a Motion to Suppress Evidence of Identification (Doc. No. 21), Zarate challenges the use of a single-photograph display for his identification by an informant. Through a Motion to Suppress Statements (Doc. No. 22), Zarate argues that during the execution of a search warrant, he made a statement that police elicited in violation of his privilege against self-incrimination. Through a Motion to Suppress Physical Evidence (Doc. No. 23), Zarate challenges the truthfulness of the allegations in the search warrant affidavit and demands a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). These motions are referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

## I. BACKGROUND

Officer Michael Hentges, of the Minneapolis Police Department, was involved in the arrest of a person for possession of cocaine. That person agreed to become an informant. The informant supplied Hentges with several details about his regular cocaine dealer, whom the informant knew by the name of Pepe. According to the informant, Pepe drove a black Chevy Tahoe and typically sold cocaine in the area of 40th Street and Clinton Avenue South.

On at least three separate occasions, Hentges directed the informant to set up a transaction with Pepe. After the informant called Pepe, Hentges would drive the informant to the site of the transaction. Hentges saw the informant walk over to a black Chevy Tahoe and receive cocaine. Hentages also recorded the license plate number for the Tahoe.

Officer Jose Gomez, also of the Minneapolis Police Department, checked licensing records and discovered that the Tahoe was registered to "Miguel Lescas Zarate." Gomez cross-referenced this information to retrieve a state identification photo. Hentges showed a copy of this photo to the informant, who immediately recognized the person in the photo as Pepe.

Based in part on this information, Gomez sought a search warrant for Pepe's purported residence in south Minneapolis. Gomez had a police team maintain surveillance of the residence while a search warrant was being obtained. During this surveillance, police saw a man leave the residence in a white van. Police detained the man and took him back to the residence. Gomez subsequently identified the man as Zarate.

Police discovered a large quantity of a substance, later determined to be cocaine, in the residence. While the search was ongoing, Gomez took Zarate into a bathroom. Zarate had not received a *Miranda*

2

warning. Gomez explained that Zarate was under arrest for a drug offense. Gomez then spoke about whether Zarate would inform or cooperate in exchange for more lenient treatment. According to Gomez, he "probably" asked Zarate more than one question in the course of this discussion. Zarate allegedly responded, "What can I say, the stuff is mine, my family had nothing to do with it."

## II.   DISCUSSION

### A.   Identification by Informant

Zarate argues that, because his out-of-court identification by the informant posed a substantial likelihood of misidentification, the identification violated due process. A two step test is used to evaluate whether an out-of-court identification violates due process. It first is determined whether the identification procedure, by itself, was impermissibly suggestive. If so, then the inquiry shifts to whether, under the totality of the circumstances, the suggestive procedure caused a substantial likelihood of misidentification. *United States v. Triplett*, 104 F.3d 1074, 1079 (8th Cir. 1997).

A single photograph display is ordinarily assumed to be impermissibly suggestive. *Robinson v. Clarke*, 939 F.3d 573, 575 (8th Cir. 1991). Thus the analysis turns to whether that procedure caused a substantial likelihood of misidentification. The prejudice from the suggestive identification procedure is weighed against factors that support the reliability of the identification. These factors include whether the person making the identification had an opportunity to view the suspect during the crime; the length of time between the crime and the identification; and the level of certainty by the person making the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *United States v. Williams*, 340 F.3d 563, 567 (8th Cir. 2003).

Here the informant told Hentjes that Zarate was his regular cocaine dealer. Hentjes watched the

informant set up and execute three separate transactions with Zarate. Thus the informant had ample opportunity to view Zarate and, when asked to make an identification, expressed no hesitation or doubt. Considering the totality of the circumstances, these factors outweigh any impermissible suggestiveness from the use of a single photograph display. The out-of-court identification does not violate due process and its fruits need not be suppressed.

### B.     Statement During Execution of Search Warrant

Zarate claims that his statement to Gomez, during the execution of the search warrant, was taken in violation of his privilege against self-incrimination. This constitutional privilege requires that a suspect, once taken into police custody, shall receive a *Miranda* warning before being subject to police interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). The parties here do not contest that, when Zarate made his statement, he was in custody and had not received a *Miranda* warning. The sole issue, therefore, is whether Gomez' actions constituted an interrogation.

Police actions constitute interrogation when an officer engages in express questioning or its functional equivalent. This standard incorporates words or actions by police, other than those normally incident to custody, that police know are likely to result in an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). When police seek information from a suspect in exchange for leniency, this information typically includes details that will incriminate the suspect. Under these circumstances a *Miranda* warning is appropriate. *See United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004); *United States v. Peck*, 161 F.3d 1171 (8th Cir. 1998).

When speaking with Zarate, Gomez discussed the possibility that Zarate would cooperate with police as an informant. Gomez admitted that he probably posed more than one express question to Zarate

in the course of this discussion. It was reasonable for an officer to expect, in this context, that Zarate would disclose incriminating facts in exchange for lenient treatment. Because Gomez was engaged in questioning or its functional equivalent, his actions constituted interrogation. Zarate responded to this interrogation while in custody and without the benefit of a *Miranda* warning. As a result his statement should be suppressed.

        C.        **Search Warrant Affidavit**

Zarate challenges the affidavit supporting the search warrant executed at his residence. He questions the allegations in the affidavit, arguing that a hearing is required to determine whether these allegations are truthful.

The facts in a search warrant affidavit are presumed to be truthful. To obtain a hearing on the truthfulness of facts in a search warrant affidavit, a defendant is required to specifically point out which portions of the affidavit are false and why. The defendant must further support this argument with an offer of proof. A conclusory statement that a search warrant affidavit is false, without further support, will not allow a hearing into the truthfulness of the affidavit. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant cannot seek a hearing when that defendant does not actually allege that specific portions of the affidavit are false. *United States v. Hull*, 419 F.3d 762, 771 (8th Cir. 2005).

The search warrant in this matter was issued on October 17, 2005. In order to establish that portions of this search warrant affidavit are false, Zarate has submitted another search warrant that issued on October 5, 2005. The affidavits for both warrants allege that a person known as Pepe was dealing cocaine in parts of south Minneapolis. Zarate implies, from the similarities between the two warrants, that the allegations in the October 17 warrant were fabricated or misappropriated from the October 5 warrant.

5

This contention does not survive a careful reading of the two warrants. The affidavits supply very different narratives on how police acquired probable cause for a search. They describe events with different informants and differing patterns of police surveillance. Nor are there any similarities between the vehicles or residences that are the subjects of the two warrants. The only shared facts are the sale of cocaine by a person using a common latino nickname.

Standing alone, this coincidence is not sufficient to question the truthfulness of the October 17 search warrant affidavit. And Zarate does not otherwise argue that any details in that affidavit are false. Thus it is not necessary to hold a hearing on the truthfulness of the allegations in the affidavit.

### III.    CONCLUSION

For the reasons discussed above, this Court concludes that the identification procedure did not violate due process and that the fruits of that identification are admissible at trial. But when the statement was taken from Zarate during execution of the search warrant, his privilege against self-incrimination was violated and the statement is properly suppressed. The search warrant is presumed to be valid and no hearing is required on the truthfulness of allegations in the search warrant affidavit. This Court recommends, therefore, that the pretrial motions of Zarate be disposed of accordingly.

### IV.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Zarate's Motion to Suppress Evidence of Identification (Doc. No. 21) be **DENIED.**

2. Zarate's Motion to Suppress Statements (Doc. No. 22) be **GRANTED.**

3. Zarate's Motion to Suppress Physical Evidence (Doc. No. 23) be **DENIED.**

Dated this 9th day of January, 2006.                    S/Jeanne J. Graham

                                                        _____
                                                        JEANNE J. GRAHAM
                                                        United States Magistrate Judge

       Under Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by January 27, 2006, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A District Court Judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is not appealable directly to the Court of Appeals.